UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

—————————————————————————— X

IZAK CHALOH,

               Plaintiff,

      v.

CHRYSLER CAPITAL LLC, EXPERIAN
INFORMATION SOLUTIONS, INC., and FAIR
ISAAC CORPORATION.,

               Defendants.

—————————————————————————— X

**MEMORANDUM AND ORDER**

25-CV-1675 (EK) (LKE)

**LARA K. ESHKENAZI**, United States Magistrate Judge:

Before the Court are the motions of Defendants Experian Information Solutions, Inc. ("Experian") and Santander Consumer USA Inc., doing business as Chrysler Capital ("Chrysler"), to compel Plaintiff Izak Chaloh ("Plaintiff" or "Chaloh") to arbitrate his claims and to stay this action pending the completion of arbitration. For the reasons set forth below, the Court grants both motions to compel and stays the claims against Experian and Chrysler pending the completion of arbitration.

## I.    BACKGROUND

### A.    Factual Background

#### 1.    Plaintiff's Allegations

Plaintiff alleges that on or around October 10, 2023, the vehicle that he leased from Chrysler was stolen. (Compl. ¶¶ 7,10, ECF 1.) After reporting the theft to his insurance company, the insurance company paid the outstanding balance to Chrysler. (*Id.* ¶ 9.) According to Plaintiff, the insurance company's payment "settl[ed] the lease" and thereby "terminated" the lease agreement between him and Chrysler. (*Id.*) Nonetheless, Plaintiff alleges that Chrysler

"improperly" and "maliciously" reported this event to credit agencies as an "'early termination' without indicating that the early termination was 'fully settled,' a designation that would have clarified that the lease termination was due to the [v]ehicle being stolen and fully compensated by the insurance company." (*Id.* ¶ 10.) Plaintiff alleges that as a result of Chrysler's designation, Experian reported Plaintiff's account as delinquent and Defendant Fair Isaac Corporation ("FICO") reduced his credit score, resulting in financial and reputational harm. (*Id.* ¶¶ 11-13, 22.)

Plaintiff and Chrysler's New York Motor Vehicle Lease Agreement ("Lease Agreement") contains an arbitration provision, providing in relevant part:

> YOU AGREE THAT ANY AND ALL CLAIMS WILL BE RESOLVED BY INDIVIDUAL ARBITRATION AND NOT IN COURT IF YOU OR [CHRYSLER] REQUESTS ARBITRATION. YOU HEREBY ACKNOWLEDGE THAT YOU ARE WAIVING YOUR RIGHT TO PROCEED IN COURT, AND TO JURY TRIAL. ADDITIONALLY, YOU WAIVE ALL RIGHTS TO PROCEED IN A CLASS ACTION OR CLASS ARBITRATION. Any controversy or claim between or among you and [Chrysler], including, but not limited to, those arising out of or relating to the Vehicle, this Lease or any related agreement or any claim based on or arising from an alleged tort, shall at the request of either party be determined by individual arbitration …. The arbitration shall be governed by the Federal Arbitration Act … notwithstanding any choice of law provision in this Lease ….

(Decl. of Diane Rubin ("Rubin Decl."), Ex. B ("Lease Agreement") at 7, ECF 34-2.)

### 2.    Plaintiff's CreditWorks Account

On November 19, 2018, Plaintiff enrolled in CreditWorks, "Experian's credit monitoring service provided by [Experian's] affiliate, ConsumerInfo.com, Inc. … (which does business as Experian Consumer Services ('ECS'))." (Experian Mem. L. at 11, 13, ECF 24; Decl. of Dan Smith ("Smith Decl.") ¶ 3, ECF 25; Pl. Opp. to Experian Mem. L. at 5, ECF 26.) ECS and Experian are wholly-owned subsidiaries of Experian Holdings, Inc. (Smith Decl. ¶ 2.) To enroll in CreditWorks, Plaintiff was required to complete two webforms. (*Id.* ¶ 3.) First, Plaintiff needed to enter his name,

2

address, phone number, and e-mail address, and then click the "Submit and Continue" button to bring him to the second webform. (*Id.*; Smith Decl. Ex. 1, ECF 25-1.) Next, on the second webform, Plaintiff was required to enter his social security number, date of birth, and a username and password. (*Id.* Ex. 2, ECF 25-2.) The following disclosure was displayed directly below the text boxes to enter and confirm his password: "By clicking 'Submit Secure Order': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy." (*Id.*) The phrase "Terms of Use Agreement" was a hyperlink in blue font, and if clicked, would have opened a window with the entire text of the Terms of Use Agreement. (*Id.* ¶ 4.) The entire Terms of Use Agreement was therefore available to view prior to submitting the webform. (*Id.*) Immediately below the disclosure was a large purple button that states "Submit Secure Order." (*Id.*)

After entering the required information, Plaintiff clicked the "Submit Secure Order" button and therefore accepted and agreed to the Terms of Use Agreement. (*Id.* ¶ 5 ("Plaintiff would not have been able to successfully enroll in CreditWorks unless he clicked that button.").) At the time of his enrollment, Plaintiff agreed to be governed by the then-current Terms of Use Agreement in effect, which was revised on October 25, 2018. (*Id.*; Smith Decl. Ex. 3 ("2018 Agreement") at 3, ECF 25-3 ("This Agreement may be updated from time to time. … Each time you order, access or use any of the Services or Websites, you signify your acceptance and agreement, without limitation or qualification, to be bound by the then current Agreement.").) After enrolling, Plaintiff continued to use the membership, including after the effective date of the version of the Terms of Use Agreement in effect at the time Plaintiff filed this lawsuit. (*Id.* ¶ 5.)

Each version of the Terms of Use Agreement in effect during Plaintiff's enrollment has an arbitration agreement, which expressly applies to ECS's affiliates. (*Id.* ¶ 6.) The arbitration clause provides:

> For purposes of this arbitration provision, references to "ECS," "you," and "us" shall include our respective parent entities, subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns, websites or the foregoing, as well as all authorized or unauthorized users or beneficiaries of Services and/or Websites or information under this or prior Agreements between us relating to Services and/or Websites.

(2018 Agreement at 5.) The agreement further provides that:

> For the purposes of this Agreement, the terms "we," "us" or "ECS" refer to Consumerinfo.com, Inc., an Experian company (also known as Experian Consumer Services), and referred to as "Experian" on the Websites, its predecessors in interest, successors and assigns, and any of its third party service providers (including, without limitation, cloud service providers) who ECS uses in connection with the provision of the Services to you.

(*Id.* at 2.) During the entirety of Plaintiff's enrollment in CreditWorks, EIS has been an affiliate of ECS. (Smith Decl. ¶ 6.) Both the 2018 Agreement and the Terms of Use Agreement, revised December 5, 2024 ("2024 Agreement"), provide that "ECS and you agree to arbitrate all disputes and claims between us arising out of this Agreement directly related to the Services or Websites to the maximum extent permitted by law, except any disputes or claims which under governing law are not subject to arbitration." (2018 Agreement at 5; 2024 Agreement at 8.)

The 2018 Agreement in effect at the time Plaintiff enrolled in CreditWorks excluded

> any dispute you may have with us arising out of or relating to the Fair Credit Reporting Act (FCRA) or other state or federal laws relating to the information contained in your consumer disclosure or report, including but not limited to claims for alleged inaccuracies in your credit report or the information in your credit file, shall not be governed by this agreement to arbitrate.

4

(2018 Agreement at 5.) However, the 2024 Agreement in effect at the time Plaintiff filed this lawsuit provides:

> The agreement to arbitrate includes, but is not limited to, claims brought by you against ECS, whether based in contract, tort, statute (including, without limitation, the Fair Credit Reporting Act and the Credit Repair Organizations Act), for fraud, misrepresentation or any other legal theory; claims arising out of or relating to any aspect of the relationship between us arising out of any Service or Website, claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising); claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and claims that may arise after the termination of this Agreement.

(2024 Agreement at 9.) Both Agreements state that "[a]ll issues are for the arbitrator to decide," including the "scope and enforceability" and "terms and conditions" of the Agreements. (*Id.* at 10; 2018 Agreement at 5.)

### B.   **Procedural History**

On March 26, 2025, Plaintiff filed a Complaint against Chrysler, Experian, and FICO, alleging violations of the FCRA, negligence, defamation, and libel. (*See generally* Compl.) Plaintiff seeks monetary damages, punitive damages, and injunctive relief. (*See id.*)

On July 16, 2025, Experian filed a fully briefed motion to compel arbitration and stay this action. (ECFs 23-29.) On August 7, 2025, Chrysler also filed a fully briefed motion to compel arbitration and stay this action. (ECFs 30-35.) The Honorable Judge Eric R. Komitee referred both motions to compel to the undersigned for a memorandum and order. (Oct. 17, 2025, Order.)

## II.   **LEGAL STANDARD**

The Federal Arbitration Act ("FAA") provides that "a written provision in any…contract evidencing a transaction involving commerce to settle by arbitration… shall be valid, irrevocable, and enforceable…" 9 U.S.C. § 2. The FAA indicates a "national policy favoring arbitration" where

5

the parties have agreed to arbitrate. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 228 (2d Cir. 2016). The Supreme Court has held that "arbitration agreements are simply contracts" which can resolve disputes "'that the parties have agreed to submit to arbitration.'" *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). The court must first determine "whether a valid arbitration agreement exists" by evaluating traditional contract principles. *Id.* at 149.

Arbitration is a matter of contract, and a party cannot be compelled to arbitrate disputes to which it has not agreed. *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 395 (2d Cir. 2015). Therefore, the court must answer two preliminary questions: "1) whether the parties agreed to arbitrate; and, if so, 2) whether the claims are within the scope of the arbitration agreement." *Id.* at 394. The non-moving party "bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue." *Padula v. eBay*, No. 21-cv-5391 (MKB) (SJB), 2022 WL 18456614, at *4 (E.D.N.Y. Dec. 29, 2022), *R. & R. adopted*, 2023 WL 375554 (E.D.N.Y. Jan. 24, 2023).

The first question is answered by looking to state contract law. *First Options of Chicago, Inc.*, 514 U.S. at 944. Under New York law[1], "courts look to the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the minds…" such that there is "manifestation or expression of assent necessary to form a contract" that demonstrates the parties' intent to enter an agreement. *Minelli Constr. Co. v. Volmar Constr., Inc.*, 917 N.Y.S.2d 687, 688 (N.Y. App. Div. 2011) (internal quotations and citation omitted). Parties cannot delegate

---

[1] The parties have not raised choice-of-law as an issue. Plaintiff and Experian both cite to New York law. (Pl. Opp to Experian Mem. L. at 4-5; Experian Mem. L. at 16-17.) As for Plaintiff's claims against Chrysler, the Lease Agreement provides that it is governed by New York law, where the dealer is located. (Lease Agreement at 8.) Therefore, this Court applies New York law. *See Moshe Borukh v. Experian Info. Sols.*, Inc., No. 24-cv-6022 (NRM) (JRC), 2025 U.S. Dist. LEXIS 80358, at *10 (E.D.N.Y. Apr. 28, 2025).

the question of whether they formed an agreement to arbitrate to the arbitrator. *Drs. Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 n.5 (2d Cir. 2019).

The second question, whether an issue is within the scope of the arbitration agreement, is also determined by the court unless the parties provide "clear and unmistakable evidence" that the parties assented to the delegation of that question to the arbitrator. *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198-99 (2d Cir. 1996). Courts should "resolve 'any doubts concerning the scope of arbitrable issues in favor of arbitration.'" *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 135 (2d Cir. 2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

In deciding a motion to compel arbitration, the court uses a similar standard to that of a motion for summary judgment. *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). The court must "consider all relevant, admissible evidence" and "draw all reasonable inferences in favor of the non-moving party." *Nicosia*, 834 F.3d at 229 (internal quotations omitted). The party seeking to compel arbitration "must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts" to the opposing party to show there are issues of material fact as to contract formation. *Hines v. Overstock.com, Inc.*, 380 Fed. App'x 22, 24 (2d Cir. 2010). "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to… trial." 9 U.S.C. § 4. However, if there was a valid agreement to arbitrate, the FAA requires the court to stay the case until such arbitration has occurred. *See Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) (holding that "a stay of proceedings [is] necessary after all claims have been referred to arbitration and a stay requested").

## III.    DISCUSSION

### A.    Chrysler

#### 1.    Agreement to Arbitrate

It is undisputed that Plaintiff entered into a Lease Agreement with Chrysler. (Pl. Opp to Chrysler Mem. L. at 1 ("Plaintiff entered into the Lease Agreement with Chrysler to lease a Dodge Charger.").) By signing the Agreement, the parties agreed to arbitrate "[a]ny controversy or claim between or among you and [Chrysler], including, but not limited to, those arising out of or relating to the Vehicle[ or] this Lease." (Lease Agreement at 7.) Plaintiff argues that the Lease Agreement was terminated, and, therefore, the arbitration clause was terminated because the Agreement "contains no provision indicating that the arbitration clause shall survive the termination," and because "[c]ontract terms, including arbitration provisions, are presumed to terminate with the contract unless there is express language providing for their survival." (Pl. Opp to Chrysler Mem. L. at 8, ECF 33.) Chrysler counters that the Lease Agreement was not terminated, but even if it were, an arbitration clause survives contract termination absent an express term to the contrary. (Chrysler Reply Br. at 2-3, ECF 35.)

The Court agrees with Chrysler that even if the Lease Agreement was terminated—an issue this Court need not decide at this juncture—the arbitration provision would have survived the termination. "An arbitration provision can survive the termination of a contract." *Shalomayev v. Altice USA, Inc.*, No. 21-cv-5540 (MKB), 2022 U.S. Dist. LEXIS 116144, at *24 (E.D.N.Y. June 30, 2022); *see Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 253-55 (1977) ("[I]n the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract."); *Butchers, Food Handlers & Allied Workers Union, Loc. 174 v. Hebrew Nat'l*

8

*Kosher Foods, Inc.*, 818 F.2d 283, 287 (2d Cir. 1987) ("If the contract does not state that the duty to arbitrate ends with the termination of the contract, the strong policies favoring arbitration should ordinarily lead the court to conclude that the obligation to arbitrate …survives the expiration of the contract."); *Salzano v. Lace Entm't Inc.*, 2014 U.S. Dist. LEXIS 98029, at *9 (S.D.N.Y. July 18, 2014) ("Parties to an expired contract are still subject to its arbitration clause unless the parties clearly intended to limit the provision to disputes or claims that arise during the duration of the contract.") Here, the Lease Agreement contains no language limiting the arbitration clause to the duration of the contract. (*See* Lease Agreement at 7.) Indeed, the arbitration clause is broad, covering "any controversy or claim between [Plaintiff] and [Chrysler], including, but not limited to, those arising out of or relating to the Vehicle[ or[ this Lease[.]" (Lease Agreement at 7.) Therefore, even if the Agreement were terminated, the broad language of the arbitration clause and the "strong policies favoring arbitration" lead this Court to conclude that the parties' obligation to arbitrate survives termination. *Butchers*, 818 F.2d at 287; *see also McAllister Bros., Inc. v. A & S Transp. Co.*, 621 F.2d 519, 522 (2d Cir. 1980) ("'[D]oubts[] should be resolved in favor of coverage' and arbitration should be compelled 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 589 (1960))).

### 2.    Scope of the Arbitration Agreement

As to the second prong of the analysis, Plaintiff argues that his claims are not related to the subject matter of the Lease Agreement and are therefore beyond the scope of the arbitration clause. (Pl. Opp to Chrysler Mem. L. at 5-6.) Specifically, Plaintiff contends that the claims "arise entirely from Chrysler's independent reporting obligations under federal and state law." (*Id.* at 6.) Chrysler

9

argues that Plaintiff's claims relate to the Lease Agreement because Chrysler "disputes whether Plaintiff complied with the payment terms of the Agreement," and the broad language of the arbitration provision is not limited to disputes regarding the Agreement. (Chrysler Reply Br. at 5).

The Second Circuit limits the scope of the FAA to "agreements to arbitrate controversies that 'arise out of' the parties' contractual relationship that is, controversies that were caused by the relationship." *Davitashvili v. GrubHub Inc.*, 131 F.4th 109, 119 (2d Cir. 2025) (quoting *Viking River Cruises Inc. v. Moriana*, 596 U.S. 639, 652 n.4 (2022)). The Second Circuit has also found that "[t]he words 'any and all' are elastic enough to encompass disputes over whether a claim is… within the scope of arbitration." *PaineWebber Inc.*, 81 F.3d at 1199. Following the decision in *PaineWebber*, New York courts have concluded that when the language of a contract commits all issues to arbitration, the issue of the scope of the agreement should be decided by the arbitrator. *See Smith Barney, Inc. v. Hause*, 655 N.Y.S.2d 489, 491 (N.Y. App. Div. 1997) (finding that the language of "any controversy arising out of or relating to… [plaintiff's] accounts… or… with respect to this agreement…" extends to a determination of the agreement's scope); *see also Fayez-Olabi v. Credit Acceptance Corp.*, No. 21-cv-5443 (AMD) (LGD), 2022 U.S. Dist. LEXIS 131575, at *10 (E.D.N.Y. July 25, 2022) ("New York law governs the contract and requires courts to 'give effect to the parties' intent as expressed by the plain language of the provision."(quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 176 (2d Cir. 2003)).

Here, the arbitration clause provides that "ANY AND ALL CLAIMS WILL BE RESOLVED BY INDIVIDUAL ARBITRATION AND NOT IN COURT IF YOU OR [CHRYSLER] REQUESTS ARBITRATION." (Lease Agreement at 7.) "Any controversy or claim between [Plaintiff] and [Chrysler] … shall at the request of either party be determined by individual arbitration." (*Id.*) "The arbitration shall be governed by the [FAA] …, notwithstanding

any choice of law provision in this Lease, and under the authority and applicable consumer rules and procedures of the American Arbitration Association ('AAA')[.]" (*Id.*) Consistent with this broad language, issues of arbitrability, including the scope of the agreement, must be decided by the arbitrator if the parties have expressly agreed to delegate those issues to the arbitrator. *See McCoy v. Dave & Buster's, Inc.*, No. 15-cv-465 (JFB) (AYS), 2018 WL 550637, at *7 (E.D.N.Y. Jan. 24, 2018) (finding that an arbitration provision incorporating AAA rules delegated arbitrability decisions to the arbitrator, including questions as to the scope of the agreement); *McDonnell Douglas Fin. Corp. v. Penn. Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988) ("[A] broad clause [is one] in which parties agree to submit to arbitration disputes of any nature or character,  or simply any and all disputes." (internal quotation marks and citation omitted)). All of Plaintiff's claims arise from the allegation that Chrysler failed to properly report the termination of the Lease Agreement, resulting in negligence, defamation, libel, and a violation of the FCRA. (Compl. ¶ 10.) Indeed, Chrysler could not have engaged in the conduct that led to Plaintiff's allegations in the absence of their Lease Agreement. As such, given that Plaintiff's claims arise from the contractual relationship and the expansive language of the arbitration clause, Plaintiff's claims against Chrysler fall within the scope of the arbitration clause. *See, e.g.*, *Fayez-Olabi*, 2022 U.S. Dist. LEXIS 131575, at *10-11.

### B.    Experian

As to Plaintiff's claims against Experian, Plaintiff concedes that he enrolled in CreditWorks in 2018 and agreed to the Terms of Use Agreement. (Pl. Opp. to Experian Mem. L. at 5 (Plaintiff "accepted and agreed to be bound by the Terms of Use Agreement" when he enrolled in CreditWorks.).) The 2018 Agreement had an arbitration clause, providing that "ECS and you agree to arbitrate all disputes and claims between us arising out of this Agreement directly related

to the Services or Websites to the maximum extent permitted by law, except any disputes or claims which under governing law are not subject to arbitration." (2018 Agreement at 5.) The 2018 Agreement provided that "any dispute you may have with us arising out of or relating to the …FCRA[] or other state or federal laws relating to the information contained in your consumer disclosure or report, including but not limited to claims for alleged inaccuracies in your credit report ..." is not governed by the arbitration agreement (*Id*.) In contrast, the 2024 Agreement includes an agreement to arbitrate FCRA claims, as well as "claims arising out of or relating to any aspect of the relationship between us," and "claims that arose before this or any prior Agreement." (2024 Agreement at 9.) The 2018 Agreement provided that Terms of Use "may be updated from time to time. … Each time you order, access or use any of the Services or Websites, you signify your acceptance and agreement, without limitation or qualification, to be bound by the then current Agreement." (2018 Agreement at 3.)

Plaintiff's sole argument in opposition to Experian's motion to compel arbitration is that the 2018 Agreement should govern because the dispute arose prior to the 2024 Agreement, and as such, his claims would not be subject to arbitration due to the exception for FCRA claims. (Pl. Opp. to Experian Mem. L. at 6-7 (stating that Plaintiff first contacted Experian in November 2023, "well before the 2024 Agreement came into effect").) Defendant counters that because Plaintiff continued to use CreditWorks after December 2024, Plaintiff agreed to be bound by the most recent 2024 Terms of Use Agreement. (Experian Reply Br. at 2, ECF 28 ("Plaintiff also does not dispute that he continued to use CreditWorks after the December 2024 version took effect, thereby assenting to that amended agreement.").)

Critically, both Agreements contain a delegation clause, providing that "[a]ll issues are for the arbitrator to decide," including the "scope and enforceability" and "terms and conditions" of

12

the Agreements. (2018 Agreement at 5; 2024 Agreement at 10.) "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019). Here, the issue of whether the arbitration clause applies to Plaintiff's FCRA claims is an issue of scope, which has been delegated to an arbitrator by both Agreements. (2018 Agreement at 5; 2024 Agreement at 10.) Accordingly, regardless of whether Plaintiff is bound by the terms of the 2018 or 2024 Agreement, Plaintiff would still be subject to a valid arbitration clause and delegation clause, which requires an arbitrator to determine whether the arbitration clause applies to the FCRA claims. *See Oestreicher v. Equifax Info. Servs., LLC*, No. 23-cv-00239 (RER) (MMH), 2024 U.S. Dist. LEXIS 49683, at *21 (E.D.N.Y. Mar. 20, 2024) ("[B]ecause the delegation clause clearly covers all issues of scope, the Court cannot, and will not, delve into whether the FCRA dispute is outside the scope of the arbitration agreement."); *Alvarez v. Experian Info. Sols., Inc.*, 661 F. Supp. 3d 18, 28 (E.D.N.Y. 2023) (collecting cases where courts have "come to the same conclusion when dealing with identical [delegation clause] language and have declined to reach the question of arbitrability"); *see also Coulter v. Experian Info. Sols., Inc.*, 2021 WL 735726, at *4 n.2 (E.D. Pa. Feb. 25, 2021) ("Plaintiff argues that his FCRA claim is exempted from the Arbitration Provision that he agreed to in 2017. Whether Plaintiff's FCRA claim is subject to the Arbitration Provision is a question of the 'scope' of the Provision, and thus falls within the arbitrator's authority to decide.")

Therefore, this Court finds that the question of arbitrability as to Plaintiff's claims against Experian has been validly delegated to an arbitrator, and grants Experian's motion to compel arbitration.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants the motions of Defendants Chrysler and Experian to compel arbitration. The FAA mandates "a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz*, 794 F.3d at 345. Accordingly, the Court stays the action against both Chrysler and Experian pending completion of arbitration.

**SO ORDERED.**

Dated:   Brooklyn, New York
          March 18, 2026

*Lara K. Eshkenazi*
LARA K. ESHKENAZI
United States Magistrate Judge

14